The Honorable Bolley "Bo" Johnson Speaker, Florida House of Representatives 420 The Capitol Tallahassee, Florida 32399-1300
Dear Mr. Speaker:
You have asked two questions regarding the eligibility of an individual to serve on the board of directors of a community health purchasing alliance in light of s. 408.705(4), F.S. This opinion is expressly limited to a consideration of the statutory requirements of s. 408.705(4), F.S., and does not express any opinion regarding the jurisdiction of the Florida Commission on on Ethics. Your questions may be stated as follows:
1) Does s. 408.705(4), F.S., as created by s. 74, Ch. 93-129, Laws of Florida, prohibit the appointment of a person to the board of directors of a community health purchasing alliance who is a member of the board of directors of a nonprofit community organization that is licensed by the Department of Health and Rehabilitative Services for treatment of substance abusers, mentally ill persons, disturbed children and geriatric services recipients?
2) Does s. 408.705(4), F.S., as created by s. 74, Ch. 93-129, Laws of Florida, prohibit the appointment of a person to the board of directors of a community health purchasing alliance who is the owner, operator or employee of a business entity that contracts with, sells advertising space to or leases property, (e.g., warehouse space) to a health care provider?
In sum:
(1) In light of the provisions of s. 408.705(4), F.S., a person who is a member of the board of directors of a nonprofit community organization licensed by the Department of Health and Rehabilitative Services for the treatment of substance abusers, mentally ill persons, disturbed children, and geriatric services recipients, is ineligible to serve on the board of directors of a community health purchasing alliance.
(2) Section 408.705(4), F.S., does not appear to prohibit an individual who is an owner, operator, or employee of a business entity that contracts with a health care provider to sell advertising space or to lease land from serving on the community health purchasing alliance's board of directors.
Question One
The 1993 Legislature, finding that the current health care system in Florida does not provide access to affordable health care for all persons in this state, sought to implement a structured health care competition model to improve the efficiency of the health care markets in this state.[1] In setting forth the legislative intent, s. 408.70(3), F.S., states:
The Legislature intends that state-chartered, nonprofit private purchasing organizations, to be known as `community health purchasing alliances,' be established. The community health purchasing alliances shall be responsible for assisting alliance members in securing the highest quality of health care, based on current standards, at the lowest possible prices.[2]
Section 408.702, F.S., created by s. 68, Ch. 93-129, Laws of Florida, establishes a community health purchasing alliance (CHPA) in each of the 11 health service planning districts established under s. 408.032(5), F.S. The CHPAs are required to be operated as state-chartered, nonprofit private organizations organized under Ch. 617, F.S.
Each CHPA is subject to the supervision and approval of a board of directors (board) composed of 17 members who must reside within the CHPA district.[3] Section 408.705(1), F.S., provides that the initial board members are to be appointed by the Governor, the President of the Senate and the Speaker of the House of Representatives as follows:
(a) Three consumer members, one appointed by the President of the Senate, one appointed by the Speaker of the House of Representatives, and one appointed by the Governor. A consumer member may not be, or in the past have been, employed by or affiliated with a health insurer, health maintenance organization, or health care provider. The consumer members must be employees of businesses located within the community health purchasing alliance region.
(b) Three members representing state and local governments, one appointed by the President of the Senate, one appointed by the Speaker of the House of Representatives, and one appointed by the Governor. Members representing government must currently be, or in the past have been, in positions of government.
(c) Eleven members representing business and industry, two appointed by the President of the Senate, two appointed by the Speaker of the House of Representatives, and seven appointed by the Governor. Six of the business representatives must be representatives of businesses with 50 or fewer employees, with the appointing officers each appointing two such members. (e.s.)
Section 408.705(4), F.S., however, provides that no board member may "be employed by, affiliated with, an agent of, or otherwise a representative of any health care provider or insurance carrier."
Thus, a person who is employed by, affiliated with, an agent of, or otherwise a representative of a health care provider may not serve on a CHPA board. Section 408.701(13), F.S.,[4]defines "[h]ealth care provider" to mean a "state-licensed or state authorized facility, a licensed practitioner, or a county public health unit established under Part I of chapter 154, which delivers health care services to individuals."[5] (e.s.)
Your letter concerns the appointment of an individual who serves as a member of the board of directors of a nonprofit community organization. The organization is licensed by the state Department of Health and Rehabilitative Services for the treatment of substance abusers, mentally ill persons, disturbed children, and geriatric services recipients. Therefore, such an individual is, in my opinion, ineligible to serve on a CHPA board.
When the Legislature directs how a thing is to be done, that is, in effect, a prohibition against it being done in any other way.[6]
Accordingly, I am of the opinion that pursuant to s. 408.705(4), F.S., a person who is a member of the board of directors of a nonprofit community organization licensed by the Department of Health and Rehabilitative Services for the treatment of substance abusers, mentally ill persons, disturbed children and geriatric services recipients, is ineligible to serve on the board of directors of a CHPA.
Question Two
Your second inquiry concerns an individual who is not employed by a health care provider but who is the owner, operator or employee of a business entity that contracts with a health care provider. As discussed in the previous question, s. 408.705(4), F.S., prohibits a CHPA board member not only from being employed by a health care provider but from being affiliated with, an agent of or otherwise a representative of any health care provider.
The determination of whether an individual is affiliated with, or an agent of or otherwise a representative of a health care provider is dependent upon the specific facts. For example, the existence of an agency relationship is determined by the degree of control exercised by the principal over the agent.[7] It is the right of control, not the actual control that a principal chooses to exercise over the agent, which determines the relationship between the parties.[8] As the First District Court of Appeal has stated:
If the person serving is merely subject to the control or direction of the owner as to the result to be obtained, he is an independent contractor; if he is subject to the control or [sic] the person being served as to the means to be employed, he is not an independent contractor. . . . It is the right of control, not actual control or actual interference with the work, which is significant in distinguishing between an independent contractor and a servant.[9]
The term "representative" has been construed as referring to one standing in for or in place of another, constituting the agent of the other especially through delegated authority.[10]
You have not provided this office with any information indicating that the business entity, by selling the health care provider advertising space or leasing property, is, or seeks to stand in for, the health care provider. Thus, the mere act of contracting to sell advertising space or to lease property to a health care provider would not, without more, appear to make the business entity an agent or representative of the health care provider.
The term "affiliated" is not defined within the act and should, therefore, be given its plain and ordinary meaning.[11] The term has been defined to signify "a condition of being united, being in close connection, allied, or attached as a member or branch,"[12]
or to refer to a branch or unit of a larger organization, a company effectively controlled by another or associated with others under a common owner or control.[13]
Accordingly, in light of the above definitions, s. 408.705(4), F.S., would not appear to prohibit an individual who is the owner, operator, or employee of a business entity that contracts with a health provider to sell advertising space or lease property from serving on a CHPA board of directors. Had the Legislature wished to prohibit individuals who contract with a health care provider from serving on such CHPA boards, it easily could have done so by prohibiting CHPA members from owning or being employed by a business entity contracting with a health care provider. However, the determination as to whether a closer relationship or alliance exists must be determined on a case-by-case basis.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 408.70(1) and (2), F.S., as created by s. 66, Ch. 93-129, Laws of Florida.
[2] Created by s. 66, Ch. 93-129, Laws of Florida.
[3] Section 408.705(1), F.S., as created by s. 74, Ch. 93-129, Laws of Florida.
[4] Created by s. 67, Ch. 93-129, Laws of Florida.
[5] Cf., s. 408.032(9), F.S. (1992), defining "[h]ealth services" to mean "diagnostic, curative, or rehabilitative services and includes alcohol treatment, drug abuse treatment, and mental health services."
[6] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952); and Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[7] Collins v. Federated Mutual Implement Hardware Insurance Co., 247 So.2d 461 (4 D.C.A. Fla., 1971), cert. denied,249 So.2d 689 (Fla. 1971).
[8] Nazworth v. Swire Florida, Inc., 486 So.2d 637 (1 D.C.A. Fla., 1986).
[9] Farmers Merchants Bank v. Vocelle, 106 So.2d 92, 95 (1 D.C.A. Fla., 1958). And see, La Grande v. B L Services, Inc.,432 So.2d 1364, 1367 (1 D.C.A. Fla., 1983) (the decisive question is who has the right to direct what shall be done, and how and when it shall be done).
[10] Webster's Third New International Dictionary Representative p. 1926 (unabridged ed. 1981). And see, Black's Law Dictionary Representative p. 1466 (4th rev. ed. 1968) (one who represents or stands in the place of another).
[11] See, e.g., State, Department of Administration, Division of Retirement v. Moore, 524 So.2d 704, 707 (1 D.C.A. Fla., 1988) (if a term is not defined in a statute or rule, its common ordinary meaning applies).
[12] Black's Law Dictionary Affiliate p. 80 (4th rev. ed. 1968).
[13] Webster's Third New International Dictionary Affiliate p. 35 (unabridged ed. 1981) (to attach as a member or branch: bring or receive into class). And see, 2A C.J.S. Affiliated p. 512 (when used with respect to organizations, generally means that two or more organizations are allied with or closely connected with one another, or with a central body, but each organization continues to exist).